IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| ZABE JOHN JENKINS, | ) | CASE NO. 5:10 CV 1151 |
| | ) | |
| Petitioner, | ) | JUDGE BENITA Y. PEARSON |
| | ) | |
| v. | ) | MAGISTRATE JUDGE |
| | ) | WILLIAM H. BAUGHMAN, JR. |
| KEITH SMITH, Warden, | ) | |
| | ) | **REPORT & RECOMMENDATION** |
| Respondent. | ) | |

Introduction . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -2-

Facts . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
    A.    Underlying facts, trial, and sentence . . . . . . . . . . . . . . . . . . . . . . . . . . . -4-
    B.    Direct appeal . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
        1.    The Ohio court of appeals . . . . . . . . . . . . . . . . . . . . . . . . . . . -6-
        2.    The Supreme Court of Ohio . . . . . . . . . . . . . . . . . . . . . . . . . . -8-
    D.    Federal habeas action . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-
        1.    Petition . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -9-
        2.    Return of the writ . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -15-
        3.    Traverse . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-

Analysis . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
    A.    Preliminary observations . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -16-
    B.    Standards of review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
        1.    Procedural default . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -17-
        2.    AEDPA review . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -20-
    C.    Application of standards . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
        1.    The State's argument of non-cognizability need not be addressed.
            . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -22-
        2.    All claims except ground 27 should be dismissed as procedurally
            defaulted. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . -23-
            a.    Because Jenkins has conceded that grounds 1, 6, 8, 9, 10, 11,
                12, 13, 14, 15, 16, 17, 18, 19, 21, 25, and 26 were never
                presented to Ohio courts, these grounds should be dismissed
                as procedurally defaulted. . . . . . . . . . . . . . . . . . . . . . . -23-

b.　　Jenkins's grounds for relief 2, 4, 7, 20, 22, 23, 24, and 28 are also procedurally defaulted; the defaults are not excused and so should be dismissed. . . . . . . . . . . . . . . . . . . . . . . . . .  -26-

i.　　Grounds 2, 20, 23, and 24  . . . . . . . . . . . . . . . . . .  -27-

ii.　　Ground 7 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -27-

iii.　　Grounds 28 and 29 . . . . . . . . . . . . . . . . . . . . . . .  -28-

iv.　　Ground 22 . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -28-

v.　　Ground 4 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -29-

3.　　Ground 27 should be denied on the merits because the state court decision adjudicating this claim was not contrary to clearly established federal law. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -30-

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .  -35-

# Introduction

Before me by referral[1] is the amended *pro se* petition of Zabe John Jenkins for a writ of habeas corpus under 28 U.S.C. § 2254.[2] Jenkins is incarcerated at the Mansfield Correctional Institution in Mansfield, Ohio, where he is serving a life sentence with the possibility of parole after 47 years.[3] This sentence was imposed in 2008 by the Stark County (Ohio) Common Pleas court after a jury found Jenkins guilty of aggravated murder, aggravated robbery, aggravated burglary, and kidnapping – all with a firearm specifications.[4]

―――――――――――――――

[1] The matter was referred to me under General Order 2011-2 by non-document entry of January 18, 2011.

[2] ECF # 6. This petition was filed in response to the Court's order (ECF # 5) directing that an amended petition be filed or the original petition (ECF # 1) would be dismissed.

[3] ECF # 6 at 1.

[4] *Id*.

In this petition, Jenkins raises 27[5] grounds for relief.[6] The State, in its return of the writ, asserts first that all grounds for relief should be dismissed either because they all fail to state cognizable claims for relief[7] or because they are all procedurally defaulted.[8] Alternatively, the State maintains that grounds 4 and 27 should be denied on the merits.[9] Jenkins did not file a traverse.[10]

For the reasons that follow, I will recommend that all grounds but ground 27 be dismissed as procedurally defaulted, and that ground 27 be denied on the merits after AEDPA review because the state court decision adjudicating this issue was not contrary to clearly established federal law.

_____

[5] As the State observes, Jenkins numbers 29 grounds for relief, but the petition is missing grounds three and five. *See*, ECF # 16 at 8 n. 3. For internal consistency, I retain the numbering system employed by Jenkins in the petition that is based on 29 grounds but also recognize that only 27 grounds were actually set forth.

[6] ECF # 6 at 6-10, Attachment 1-7.

[7] ECF # 16 at 12-13.

[8] *Id.* at 16-22.

[9] *Id.* at 23-28.

[10] An attempt to submit an unsigned *pro se* traverse (ECF # 19) was stricken (non-document order of March 29, 2011). Despite being granted two extensions of time for filing a traverse (non-document order of February 1, 2011; non-document order of March 29, 2011), no traverse was filed.

## Facts

**A.      Underlying facts, trial, and sentence**

This case arises out the June 20, 2007, murder of Steven Hight, Sr. during a home invasion and robbery.

As determined by the state appeals court on its review of the record,[11] Jenkins was part of a group of friends who decided to rob the Canton home of Antwon Hight and Steven Hight, Jr.[12] The Hight brothers were drug dealers who sold marijuana from the home they shared with their father, Steven Hight, Sr.[13] As part of the robbery plan, Jenkins, along with four others, arrived at the Hight residence armed with a semi-automatic handgun and dressed in dark clothing with a dark bandana masking his face.[14]

When Steven Hight, Sr., who was alone in the house, responded to the knock on his front door, Jenkins, along with another assailant, rushed him, put a blanket over his head, and held him at gunpoint, as others began ransacking the house.[15] While money and drugs were

---

[11] Facts found by the state appeals court on its review of the record are presumed correct by the federal habeas court. 28 U.S.C. § 2254(e); *Brumley v. Wingard*, 269 F.3d 629, 637 (6th Cir. 2001).

[12] ECF # 16, Attachment at 108.

[13] *Id.*

[14] *Id.*

[15] *Id.* at 109.

being discovered and taken during the robbery, Hight was bound with duct tape in the bathroom.[16]

But before the home invasion could be completed, there was a knock at the side door.[17] As it happens, Steven Hight, Sr. had been on the phone with his brother Robert at the time the initial break-in occurred, and Robert, along with Ryan Rider, had come over to the house to investigate when he heard arguing and the phone drop to the floor.[18] At the side door, Rider saw the kitchen light go out, heard a deadbolt lock turn inside, and then turned to see that one of the attackers was standing beside the car holding a shotgun to Robert Hight's head.[19]

As Rider began walking back toward the car, Steven Hight, Sr. burst through the door and ran at the gunman pointing a weapon at his brother, grabbing the barrel of the gun and wrestling it away from the assailant as it went off.[20] Rider, in turn, ran toward a neighbor's house to get help as more gun shots were fired.[21] Steven Hight, Sr.'s body was later found lying dead in the driveway, shot three times.[22]

---

[16] *Id.*

[17] *Id*.

[18] *Id.*

[19] *Id*. at 109-10.

[20] *Id*. at 110.

[21] *Id*.

[22] *Id*. at 111.

Five participants in the robbery and murder were eventually arrested and charged.[23] Two of them pled guilty, and each received sentences of 15 years in exchange for their testimony against the others, including Jenkins.[24] In his case, the jury found Jenkins guilty of aggravated murder, aggravated robbery, aggravated burglary, and kidnapping, all with firearm specifications, but also acquitted him of the death penalty specifications, finding that he was neither the principal offender nor that he murdered Steven Hight, Sr. with prior calculation or design.[25] The trial judge then sentenced Jenkins to a total term of life imprisonment with a possibility of parole after 47 years.[26]

## B.    Direct appeal

### 1.    *The Ohio court of appeals*

Jenkins, acting through different counsel than had represented him at trial,[27] then timely[28] appealed the conviction and sentence.[29] In his brief Jenkins raised the following six assignments of error:

---

[23] *Id*.

[24] *Id*. at 112.

[25] *Id*. at 113.

[26] *Id.*

[27] ECF # 1 at 14; s*ee also,* ECF # 16, Attachment at 163.

[28] Ohio App. Rule 4(A) provides that a notice of appeal must be filed within 30 days of the entry of the judgment being appealed to be timely. Here, the trial court's judgment was entered on July 31, 2008 and the notice of appeal filed on August 16, 2008. ECF # 16, Attachment at 18-22, 23.

[29] ECF # 16, Attachment at 23.

-6-

1.      The verdict of the jury was against the manifest weight of the evidence and the trial court's finding of guilty was not supported by sufficient evidence.

2.      The trial court committed reversible error by sustaining the State's objections to a proper question by defense counsel to witness Raymond Byrd in violation of appellant's federal and state constitutional right to confront the witnesses against him.

3.      The trial court committed reversible error by allowing the State's peremptory challenge of juror no. 420 and by denying appellant's objection to said challenge since the challenge was exercised in a discriminatory manner in violation of appellant's right to equal protection of the law guaranteed by the fourteenth amendment to the United States constitution and article I, section 2 of the Ohio constitution.

4.      The trial court committed reversible error and the appellant was denied his right to a fair and impartial jury as guaranteed by the sixth and fourteenth amendments to the United States constitution and article I, section 10 of the Ohio constitution by the cumulative effect of allowing two jurors who had some association with the alleged victim, the victim's family and the lead detective in this matter to serve as jurors.

5.      The appellant was denied his right to a fair trial and to due process of law by the prosecution's misconduct in not disclosing to appellant's counsel of [sic] evidence favorable to the defense and by the trial court in not ordering such disclosure after an in-camera inspection of said evidence.

6.      The appellant was denied his constitutional right to a fair trial and to due process of law by the trial court's failure to instruct the jury that the State must prove a culpable mental state as an essential element in aiding and abetting another in a criminal offense.[30]

---

[30] *Id*. at 28-29.

The State filed a brief in response.[31] The Ohio appeals court then affirmed the judgment of the trial court, overruling all of Jenkins's assignments of error.[32]

**2.      *The Supreme Court of Ohio***

Now represented by the office of the Ohio Public Defender,[33] Jenkins timely filed[34] a notice of appeal with the Supreme Court of Ohio.[35] In his memorandum in support of jurisdiction Jenkins asserted the following four propositions of law:

1.      When a trial court bars cross-examination on a critical fact, the standard of review on Confrontation Clause claims is de novo.

2.      When deciding whether a Confrontation Clause violation is harmless beyond a reasonable doubt under *Chapman*, the correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nonetheless say that the error was harmless beyond a reasonable doubt.

3.      A trial court must instruct a jury on the correct standard of accomplice liability.

4.      Trial counsel and appellate counsel were ineffective for failing to raise winning issues.[36]

---

[31] *Id*. at 67-105.

[32] *Id*. at 107-142.

[33] *Id.* at 143.

[34] Ohio Supreme Court Rule of Practice 2.2(A)(1)(a) provides that an appeal is timely if it is filed within 45 days of the judgment being appealed. Here, the decision of the appeals court was entered on November 23, 2009, and the notice of appeal filed with the Supreme Court of Ohio on January 7, 2010. ECF # 16, Attachment at 107, 143.

[35] ECF # 16, Attachment at 143-44.

[36] *Id.* at 147-48.

-8-

The State filed a memorandum in opposition.[37] On March 24, 2010, the Supreme Court of Ohio denied Jenkins leave to appeal, dismissing the appeal as not involving any substantial constitutional question.[38]

**D.    Federal habeas action**

*1.    Petition*

In an amended petition filed on June 30, 2010,[39] Jenkins, *pro se*, raises the following 27 grounds[40] for habeas relief:

1.    Mr. Jenkins' witnesses were not used, he was at a partye (sic) in Chips' apartment with plenty of witnesses.[41]

2.    Went on trial for the Death Penalty Acquitted; jury finding was not the principal offender, nor did he (sic) murder with prior calculation or design. That did not have any b[e]aring on the case.[42]

3.    [Page nine missing. No ground listed.]

---

[37] *Id.* at 203-220.

[38] *Id*. at 221.

[39] ECF # 6.

[40] As noted earlier, the petition purports to list 29 grounds, but there are no grounds listed at number 3 and number 5. Further, as is the procedure in a Report and Recommendation, the grounds here are presented exactly as they appear in the petition, which includes grammar, punctuation, and spelling anomalies, only some of which are corrected for readability. All modifications are indicated.

[41] ECF # 6 at 5.

[42] *Id*. at 7.

4.     Trial court failure to instruct the jury that the state must prove a
        culpable mental state as an essential element in aiding and abetting.[43]

5.     [No ground listed.]

6.     Prosecution Ms. Kovnosky gave a completely different opening
        statement about the evidence, events on what had happened.[44]

7.     Jury selection volume 3 disk for Jenkins: page 430-juror 420 was
        excused by the prosecution for saying "she did not want to hear more
        from the defendant" Judge agree[d] with the prosecution stating "she
        did not give enough concern" defense lawyer object[ed] stating the
        defendant is an Afro-American Juror 420 is an Afro-American" Judge
        words "are you stating Batson?" Page 444, Defense lawyer had it put
        on record his objection.[45]

8.     Juror 437, transcript dated July 17, 2008 volume 4 – state that he met
        the guy that was killed (the victim Steven Height [sic] Sr.) He knew his
        granddaughter's mother, his best friend's nephew used to go with her.
        Judge Haas interfere "...sometimes people will testify and you say wait
        a minute I know that person. I didn't recognize the name..." the juror
        change up by replying "you know you meet somebody? I don't know
        him.[sic][46]

9.     Page 460-1. Prosecution did not want the jury to hear the victim sold
        drugs. Defense argue[d] that the victim['s] son sold drug[s] from the
        home it was brought up [the] Elvis Wooten case and other that there
        were three pounds and some seen 1 1/2 pound. [sic] Complicity to
        trafficking if it sold on the premises and he knew that came from the
        defense lawyer. The Judge refused to acknowledge that the victim was
        involved and did not allow that information to be entered. Case was
        tried in the wrong court.[47]

---

[43] *Id*. at 9.

[44] *Id*. at 16.

[45] *Id.* at 16-17.

[46] *Id.* at 17.

[47] *Id.*

-10-

10.   closer look at crime scene and the victim['s] body it will bring more than reasonable doubt into the light.[48]

11.   Two other persons that went to trial, Mr. Elvis Wooten; Ms. Latoya Rutledge trial by placing them side by side with Mr. Jenkins the crime scene, the truth of just what happened that night will come visible.[49]

12.   This case should have been change of venue, when the death penalty is on the line by not taking this case outside of Canton this town is too close.[50]

13.   The Victim was Caucasian and involved in something that was dangerous. He had three electro abrasions without shoes or socks could be interpreted as torture. Why was the house wipe[d] clean except for one finger prints [sic], no evidence of the late mother that had passed away just a month before after all it was her house?[51]

14.   Mr. Jenkins the Appellant [sic] was 19 year [sic] old his side of the story never came out, his whole life turn into a nightmare; he was teaching chess in the library, except for one juvenile record for being talked into holding a gun for an older Caucasian that would have been his third conviction a favor, that is all on his record, since everyone knew he was gullible. This time this was done without his permission, he was miles away at a party. He had witness[es] to that effect they were never called. The Appellant [sic] was planning to go to college, working at Wal-Mart and another job at the time of arrest. His witness was intimidated, to stay away, some were shot at and force[d] out of town.[52]

15.   this case should have been turned over to the Federal [sic] and handle[d] by the federal and not the State, for investigation, there were

---

[48] *Id.*

[49] *Id.*

[50] *Id.*

[51] *Id.* at 18.

[52] *Id.*

lots of guns, drug trafficking, drug manufacturing and distributing, kidnapping, as well [as] murder; the use of a silencer on these guns.[53]

16.     jury selection where the people that either knew the police officer or the victim or the victim['s] children, Mr. Jenkins did not have a prayer. Race was very much the factor.[54]

17.     And the fact that the Chevon Jackson and Judge Haas wife was her mentor from Indian River Juvenile Correction Int. And Chevon['s] mother Ms. Regina Love work at the same Correction Int. Raymond's] mother work[s] for the State, Michael Jackson['s] mother Veronica Hall work[s] for the State in the Taxes Dept.[55]

18.     Antwon Height [sic] under both Wooten and Rutledge his attitude was cold, was he told to leave and take his brother? Was he just around the corner? Berlin Lake is over an hour away. Did they leave their fishing equipment on the back porch? Review the crime scene photo.[56]

19.     Chevon Jackson that have been closed to Marlin Seymour Drug Dealer and leader of the Renegade, since she was 11 years old while being with the Renegade, she had talked about a shot gun a seeing Raymond with it. The Appellant brothers would not allow them to influence him; he was not a member of the gang.[57]

20.     This was an old shot gun and Robert Heights [sic] claim in police statement that his brother had taken the gun from Raymond and it went off, the victim try to pump it, that shotgun had never left 2311 20th street, the owner would know how to pump that old shotgun after it had been fired. Did Antwon the son of the victim gave [sic] the shotgun to Raymond Byrd. Robert Hight had to be in the house to

---

[53] *Id*.

[54] *Id*.

[55] *Id.*

[56] *Id*. at 18-19.

[57] *Id*. at 19.

-12-

observe his brother['s] action. He could not witness any shooting outside his car was in the car port.[58]

21.  Ms. Chevon Jackson testified at Mr. Wooten['s trial] but she was a no show at Zabe['s] trial. Chevon Jackson['s ] police statement 01/07/08 which did not show up Zabe Jenkins compare to Page 241-242 Raymond and Michael were being picked up from somewhere else by someone else, Raymond state it was a white girl. Shuantia Early was the second person that accused Chevon Jackson She knew about this robbery a week before, being there, the other person were that put Chevon at being at the crime scene Ms. Wilks, and Mr. Glunt there [sic] testimony to the police was never enter[ed] [at the] Jenking [sic] trial.[59]

22.  the Aunt Marsha Musisca had received benefited AGV No: 7675840; and CVS/ CRN No: V07-52205 from the death of her brother by suing and receiving money from the victim relief which is illegal, which is control by the attorney general office. By-laws from victim relief do not permit payment for drug related crimes. Ms. Marcia Macon-Bruce Chief collection Enforcement from the attorney general authorized this. Mr. Zabe John Jenking [sic] needs all payment that was made return to him.[60]

23.  Testimony from Mr. Ryan Rider, said three shots fired at him, Mr. Height [sic] witness one shots of his brother being shot by Raymond Byrd. Raymond Byrd admitted shooting the victim outside in the eye that is a lie. All outside why didn't the neighbor call the police, unless a silencer was used, the shells were planted. Another problem four Afro-American in a white neighborhood and no one called the cops; shooting, acting crazy like in the old west, but no one heard a single shot.[61]

---

[58] *Id.*

[59] *Id.*

[60] *Id.*

[61] *Id.* at 19-20.

-13-

24.    the prosecutors' was [sic] in so much of a hurry; they blame all Afro-American, but had forgotten the parts that the police involvement was shaky and the witness.[62]

25.    Antwon not Steve Jr. were allowed to enter the house the next day with police the body was outside so Steve Jr. should have been allowed to retrieve his clothes. Mr. Robert Height (sic) was a very sickly man and Ryan Rider was going to do with two canes against a lot of bad people, neither called police, the neighbors did not called (sic) the police. Our photo will show there was no room for a struggle. According to Robert Heights (sic) his brother was on the phone with him when his brother said "they coming" why open the door to danger; shot in the house or somewhere else.[63]

26.    Police Officer Robert Smith, admitting in tampering with evidence; removing evidence before it could be recorded by the crimes officer; breaking the chain of evidence. About 12 years experience.[64]

27.    The trial court committed reversible error by sustaining the state's objection to a proper question by defense counsel to witness Robert Byrd.[65]

28.    The trial court committed reversible error and the Appellant (sic) did not have an impartial jury.[66]

29.    the appellant Counsel Evidence favorable to the defense and by the trial court in not ordering disclosure after an in-camera inspection of the evidence.[67]

---

[62] *Id.* at 20.

[63] *Id.*

[64] *Id.*

[65] *Id.*

[66] *Id.* at 21.

[67] *Id.*

-14-

## 2. *Return of the writ*

In its return of the writ the State initially argues that none of the grounds are cognizable.[68] Essentially, the State asserts that the "great majority" of the stated claims appear merely to be "rambling statements of Jenkins's version of the events and/or complaints about venue, and state v. federal prosecution."[69] Further, even as to the few issues that the State acknowledges were presented to the state courts on direct appeal, the State contends that they "have been reduced here to mere issues of state law."[70]

Next, the State maintains that even read with the leniency due a *pro se* petitioner, the petition here fails to do more than make conclusory statements about Jenkins's version of events and evidence.[71] As such, the State posits, the statements alone without any constitutional analysis cannot be the basis for any federal habeas relief.[72]

Finally, the State argues that even if Jenkins's failure to raise specific cognizable grounds for relief could be overlooked, all of the grounds are procedurally defaulted due to Jenkins failure to present them to the Ohio courts.[73] In particular, the State asserts first that because only three grounds were raised to the Ohio Supreme Court, all other grounds raised

---

[68] ECF # 16 at 12.

[69] *Id.*

[70] *Id.* at 13.

[71] *Id.*

[72] *Id.*

[73] *Id.*

here are necessarily procedurally defaulted.[74] Further, while the State concedes that aspects of those three issues presented to the Ohio Supreme Court are raised here, it argues that the claims raised here were not fairly presented to the Ohio courts.[75]

**3.      *Traverse***

As noted above, Jenkins attempted to file a traverse prepared and signed by a non-attorney, which filing was stricken.[76] Despite being granted two extensions of time to file a traverse,[77] none was filed.

## Analysis

**A.      Preliminary observations**

Before proceeding further, I make the following preliminary observations:

1.      There is no dispute that Jenkins is currently in state custody as a result of his conviction and sentence by an Ohio court and that he was so incarcerated at the time this petition for habeas relief was filed.[78] Thus, Jenkins meets the "in custody" requirement of the federal habeas statute vesting this Court with jurisdiction over the petition.[79]

---

[74] *Id*. at 13, 16.

[75] *Id.* at 17-20.

[76] ECF # 19.

[77] Non-document orders of February 1, 2011 and March 29, 2011.

[78] ECF # 6 at 1.

[79] 28 U.S.C. § 2254(a); *Ward v. Knoblock*, 738 F.2d 134, 138 (6th Cir. 1984).

2.      There is also no dispute that this petition was timely filed[80] under the applicable statute.[81]

3.      In addition, Jenkins states,[82] and my own review of this Court's docket confirms, that this is not a second or successive petition for federal habeas relief as concerns this conviction and sentence.[83]

4.       Moreover, subject to the cognizability and fair presentment arguments raised by the State, it appears that the claims in this petition have been totally exhausted in the Ohio courts.[84]

5.      Finally, I note that Jenkins's prior motion for appointment of counsel has been denied[85] and that he has not requested an evidentiary hearing.[86]

## B.    Standards of review

### 1.    *Procedural default*

Under the doctrine of procedural default, the federal habeas court is precluded from

reviewing a claim for relief if the petitioner failed to obtain consideration of that claim on its

---

[80]  This amended petition was filed on June 30, 2010. ECF # 6 at 1. The final decision of the Supreme Court of Ohio was entered on March 24, 2010. ECF # 16, Attachment at 221.

[81] 28 U.S.C. § 2254(d)(1); *Bronaugh v. Ohio*, 235 F.3d 280, 283-84 (6th Cir. 2000).

[82] ECF # 6 at 11.

[83] 28 U.S.C. § 2254(b); *In re Bowen*, 436 F.3d 699, 704 (6th Cir. 2006).

[84] 28 U.S.C. § 2254(b); *Rhines v. Weber*, 544 U.S. 269, 274 (2005).

[85] ECF # 28.

[86] 28 U.S.C. § 2254(e)(2).

merits in state court, either because the petitioner failed to raise it when state remedies were still available or due to some other violation of a state procedural rule.[87]

When a violation of a state procedural rule is alleged as the basis for the default, the Sixth Circuit has long-employed a four-part test to determine if the claim is procedurally defaulted in a federal habeas proceeding:

(1)     Does a state procedural rule exist that applies to the petitioner's claim?

(2)     Did the petitioner fail to comply with that rule?

(3)     Did the state court rely on that failure as the basis for its refusal to address the merits of the petitioner's claim?

(4)     Is the state rule violated by the petitioner an adequate and independent state law basis for barring the federal court from considering the claim?[88]

In addition to establishing these elements, the state procedural rule must be shown to be (a) firmly established and (b) regularly followed before the federal habeas court will decline to review an allegedly procedurally defaulted claim.[89]

If a procedural default is established, the default may be overcome if: (1) the petitioner can show cause for the default and actual prejudice from the court's failure to address the alleged constitutional violation, or (2) that a lack of review of the claims merits will result

---

[87] *Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir. 2006).

[88] *Morales v. Mitchell*, 507 F.3d 916, 937 (6th Cir. 2007) (citation omitted).

[89] *Smith v. Ohio Dep't of Rehab. & Corrs.*, 463 F.3d 426, 431 (6th Cir. 2006) (citations omitted).

-18-

in a fundamental miscarriage of justice.[90] In addition, procedural default may also be excused by a showing of actual innocence.[91]

To establish "cause" for the default, a petitioner must generally show that some objective factor, something external to himself, precluded him from complying with the state procedural rule.[92] Demonstrating "prejudice" requires the petitioner to show that the alleged constitutional error worked to his actual and substantial disadvantage, infecting the entire proceeding with error of a constitutional dimension.[93] There can be no prejudice if the petitioner cannot show a reasonable probability of a different outcome at trial.[94]

Notwithstanding these elements, the Supreme Court has held that federal habeas courts are not required to consider an assertion of procedural default before deciding a claim against the petitioner on the merits.[95] In that regard, the Sixth Circuit has stated that a federal habeas court may bypass an issue of procedural default when that issue presents complicated questions of state law and addressing it is unnecessary to resolving the claim against the petitioner on the merits.[96]

---

[90] *Hicks v. Straub*, 377 F.3d 538, 552-52 (6th Cir. 2004) (citations omitted).

[91] *Id.*

[92] *Coleman v. Thompson*, 501 U.S. 722, 753 (1991).

[93] *United States v. Frady*, 456 U.S. 152, 170 (1982).

[94] *Mason v. Mitchell*, 320 F.3d 604, 629 (6th Cir. 2003).

[95] *Lambrix v. Singletary*, 520 U.S. 518, 525 (1997).

[96] *Hudson v. Jones*, 351 F.3d 212, 215-16 (6th Cir. 2003).

-19-

2.      *AEDPA review*

Where a state court adjudicated the merits of a claim now asserted in a federal habeas petition, the controlling federal statute is plain that the federal habeas court may use that claim as a basis for granting the writ only if the state decision was either contrary to clearly established federal law as determined by the United States Supreme Court or was an unreasonable application of that law.[97]

In applying that statute, a federal habeas court is guided by the well-known teachings of *Williams v. Taylor*.[98] As stated by the United States Supreme Court in *Williams*, a decision is "contrary to" clearly established federal law if "the state court arrives at a conclusion opposite to that reached by this Court on a question of law or if the state court decides a case differently than this Court has on a set of materially indistinguishable facts."[99] *Williams* further holds that a state court decision is an "unreasonable application" of clearly established federal law if "the state court identifies the correct governing legal principle from this Court's decisions but unreasonably applies that principle to the facts of the prisoner's case."[100]

Moreover, a federal court may not find that a state court unreasonably applied clearly established federal law simply because the habeas court "concludes on its independent

---

[97] 28 U.S.C. § 2254(d).

[98] *Williams v. Taylor*, 529 U.S. 362 (2000).

[99] *Id.* at 412. *Accord*, *Broom v. Mitchell*, 441 F.3d 392, 398 (6th Cir. 2006).

[100] *Williams*, 529 U.S. at 413; *Broom*, 441 F.3d at 398.

judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly."[101] Rather, the state court holding may be disturbed only upon showing that it was "objectively unreasonable."[102]

The Supreme Court teaches that this "objectively unreasonable" standard is "difficult to meet,"[103] and "highly deferential" to the decision of the state court.[104] As the Supreme Court explained, "[a] state court's determination that a claim lacks merit precludes federal habeas relief so long as 'fairminded jurists could disagree' on the correctness of the state court's decision."[105] Or, stated differently, a writ will issue only upon a showing that the state court's ruling "was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement."[106]

In addition, a state court may be found to have unreasonably applied clearly established federal law if it unreasonably extends or unreasonably fails to extend a clearly established federal legal principle to a new context.[107]

---

[101] *Williams*, 529 U.S. at 411.

[102] *Id.* at 409.

[103] *Harrington v. Richter*, __ U.S.__, 131 S. Ct. 770, 786 (2011).

[104] *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

[105] *Harrington*, 131 S. Ct. at 786.

[106] *Id.* at 786-87.

[107] *Williams*, 529 U.S. at 405-07. *Accord*, *Lancaster v. Adams*, 324 F.3d 423, 429 (6th Cir. 2003).

Finally, where a state court does not address the merits of a federal claim properly presented to it, "the deference due [a state court decision by the federal habeas court] under the AEDPA does not apply."[108] Then, the federal court is to review the claim *de novo*.[109]

However, as the Supreme Court emphasized in *Harrington v. Richter*, since a state court is not required to state its reasons or explain its conclusion when it adjudicates a federal claim in the merits, when a federal claim was presented to the state court and then denied without any statement of reasons or explanation for the decision, "it may be presumed that the state court adjudicated the [federal] claim on the merits in the absence of any indication or state-law procedural principles to the contrary."[110] In such circumstances, the decision of the state court would be entitled to deference from the federal habeas court.[111]

## C.    **Application of standards**

### *1.      The State's argument of non-cognizability need not be addressed.*

As noted, the State's initial argument is that "many" grounds for relief presented here are non-cognizable allegations of state law violations that are asserted without specificity.[112] While clearly that characterization seems proper as to some of Jenkins's grounds for relief,

---

[108] *Maples v. Stegall*, 340 F.3d 433, 436 (6th Cir. 2003).

[109] *Id.*

[110] *Harrington*, 131 S. Ct. at 784-85; *Brown v. Bobby*, 656 F.3d 325, 328-29 (6th Cir. 2011).

[111] *Brown*, 656 F.3d at 329.

[112] ECF # 16 at 12-13.

-22-

it is also clear that determining whether all stated claims present cognizable claims would require an lenient reading of each claim with an "active interpretation" of such claim toward finding it an allegation for "federal relief," regardless of whether the claim is "vague and conclusory."[113] Therefore, in the interests of judicial economy and with a purpose of resting a final adjudication of this petition against Jenkins on firmer grounds, I recommend not addressing the non-cognizability argument but rather proceeding to the more definitive standards of procedural default and AEDPA review.

**2.     *All claims except ground 27 should be dismissed as procedurally defaulted.***

a.     *Because Jenkins has conceded that grounds 1, 6, 8, 9, 10, 11, 12, 13, 14, 15, 16, 17, 18, 19, 21, 25, and 26 were never presented to Ohio courts, these grounds should be dismissed as procedurally defaulted.*

In his petition, Jenkins himself concedes that the 17 grounds for relief enumerated above were not presented to Ohio courts.[114] Only as to the claim in ground one does Jenkins state that the reason for his failure to raise the issue in Ohio courts was "because I trusted my lawyer."[115]

As noted above, it is well-settled that, absent a showing of cause and prejudice or actual innocence,[116] procedural default precludes a federal habeas court from considering the merits of any claim that could have been raised in state court, but was not raised, and now

---

[113] *Franklin v. Rose*, 765 F.2d 82, 84-85 (6th Cir. 1985).

[114] ECF # 6 at 6, 16-20.

[115] *Id*. at 6.

[116] *Murray v. Carrier*, 477 U.S. 478, 495-96 (1986).

could not be raised.[117] Further, it is well-settled that in Ohio a litigant is required to raise an issue at the first opportunity; otherwise, *res judicata* will bar its consideration in a subsequent proceeding.[118]

As concerns these 17 claims, I note that all these grounds arise from the events of the crime itself or the trial. Thus, those grounds would have been known to Jenkins at the time of his direct appeal to the Ohio courts. In such circumstances, the failure to raise the claims in the direct appeal means that *res judicata* would bar their assertion in a later Ohio proceeding, and that procedural default would now preclude their consideration here unless the default is otherwise excused. In that regard, Jenkins has raised no basis to excuse the default as to these 17 claims by cause and prejudice or by actual innocence.

That said, Jenkins has arguably asserted cause and prejudice – ineffective assistance of appellate counsel[119] – such as could conceivably excuse the procedural default on only one of the 17 claims he otherwise admits were not presented to Ohio courts. In that regard, the Supreme Court clearly teaches, among other things, in *Edwards v. Carpenter*[120] that a claim

---

[117] *Wainwright v. Sykes*, 433 U.S. 72, 87 (1977).

[118] *Seymour v. Walker*, 224 F.3d 542, 555 (6th Cir. 2000) (citing *State v. Perry*, 10 Ohio St. 2d 175, 226 N.E.2d 104 (1967) (syllabus ¶¶ 8,9)).

[119] Ineffective assistance of counsel can provide both cause and prejudice to excuse a procedural default. *Beuke v. Houk*, 537 F.3d 618, 631 (6th Cir. 2008).

[120] *Edwards v. Carpenter*, 529 U.S. 446 (2000).

of ineffective assistance of counsel must first be properly presented to the state courts before it may be used in federal court as cause to excuse a procedural default.[121]

In this case, the record shows that Jenkins did assert an ineffective assistance of appellate counsel claim to the Supreme Court of Ohio.[122] The Sixth Circuit has recognized that under Ohio law parties may raise ineffective assistance of appellate counsel for the first time in a motion for leave to appeal filed with the Ohio Supreme Court.[123] Moreover, because this claim was not substantively addressed by the Ohio Supreme Court,[124] it must now be considered *de novo* by the federal habeas court.[125]

The claim raised here in the federal habeas petition is that appellate counsel was ineffective for not raising the argument that trial counsel should have called alibi witnesses. In particular, ground one here contends that Jenkins was at a party at the time of the crime and that witnesses to that fact were not used at trial.[126] However, the ineffective assistance of appellate counsel claim actually presented to the Supreme Court of Ohio rests on a different grounds – *i.e*., that appellate counsel should have made a federal constitutional

---

[121] *Id*. at 451-52.

[122] As noted, Jenkins's fourth proposition of law to the Supreme Court of Ohio was that appellate counsel was ineffective for "not raising winning issues." ECF # 16, Attachment at 148.

[123] *Thompson v. Warden*, 598 F.3d 281, 285 (6th Cir. 2010) (citations omitted).

[124] *See*, *id*.

[125] *Id.*

[126] ECF # 6 at 5.

argument, not a state law claim, concerning the jury instruction on accomplices, and that appellate counsel should have argued that trial counsel was ineffective in not objecting to that instruction.[127]

It is well-settled that a claim raised in a federal habeas petition must have been previously presented to the state court as the same claim on the same theory.[128] Since, as described above, the ineffective assistance of appellate counsel claim of ground one is not the "same claim on the same theory" as was raised to the Supreme Court of Ohio, Jenkins's ineffective assistance of appellate counsel argument in ground one was not fairly presented to Ohio courts and so cannot now be used to excuse the procedural default of ground one.[129]

Therefore, I recommend finding that this ground, like the other grounds listed in this section, is procedurally defaulted, the default is not excused, and so all grounds listed in this section should be dismissed.

b.    *Jenkins's grounds for relief 2, 4, 7, 20, 22, 23, 24, and 28 are also procedurally defaulted; the defaults are not excused and so should be dismissed.*

Unlike the claims addressed previously, Jenkins does not concede that these grounds for relief have not been previously presented to Ohio courts. In addition, as with the preceding grounds, the State argues that these claims as stated fail to present cognizable

---

[127] ECF # 16, Attachment at 163.

[128] *Wagner v. Smith*, 581 F.3d 410, 417 (6th Cir. 2009) (citations omitted).

[129] *See*, *Edwards*, 529 U.S at 452; *see also*, *Blackmon v. Booker*, 394 F.3d 399, 401 (6th Cir. 2004) ("To escape procedural default, [claims] must of themselves be fairly presented ....").

clams for federal habeas relief.[130] That said, for the following reasons I will recommend that these nine claims be dismissed because of unexcused procedural defaults.

i.    Grounds 2, 20, 23, and 24

These grounds, to the extent they can be construed as federal constitutional claims and not merely argumentative musings, all appear to raise issues concerning the sufficiency of the evidence presented at trial. In that regard, while Jenkins did present a sufficiency of the evidence issue to the Ohio appeals court as his first assignment of error,[131] he failed to seek further review of this claim by the Supreme Court of Ohio.[132] As noted, the failure to present a claim through one complete round of Ohio's established review process constitutes a procedural default.[133] Moreover, Jenkins has made no attempt to excuse this default. Thus, even if grounds 2, 20, 23, and 24 are construed as stating cognizable claims for relief, those claims are procedurally defaulted and so should be dismissed.

ii.   Ground 7

Likewise, current ground seven, which arguably raises a federal *Batson* claim, is similar to the third assignment of error on direct appeal.[134] As was also the case with the prior group of claims, Jenkins did not then present any *Batson*-related claim to the Supreme Court

---

[130] ECF # 16 at 17.

[131] ECF # 16, Attachment at 28.

[132] *See*, *id*. at 147-48.

[133] *O'Sullivan v. Boerckel*, 526 U.S. 838, 845 (1999).

[134] ECF # 16, Attachment at 28.

-27-

of Ohio.[135] Therefore, for the same reasons as given above, the *Batson* claim of ground seven is procedurally defaulted because it was not presented to the Ohio Supreme Court on direct appeal. Because Jenkins has made no showing that this default can now be excused, I recommend that this ground now be dismissed.

iii.    Grounds 28 and 29

Ground 28 appears to raise the same claim (lack of an impartial jury) as was asserted as the fourth assignment of error to the Ohio appellate court,[136] and ground 29 seems to raise the same issue (*Brady* violation) as was raised in Jenkins's fifth assignment of error.[137] While both claims are arguably stated as federally cognizable claims for habeas relief, both claims are procedurally defaulted for not being presented to the Ohio Supreme Court during direct appeal.[138] Again, as before, I note that Jenkins has offered no basis by which to excuse this default. Thus, I recommend that grounds 28 and 29 be dismissed.

iv.    Ground 22

Here, Jenkins raises the claim that a relative of the victim improperly received money from an Ohio victim relief fund that should now be restored to Jenkins.[139] Although Jenkins

---

[135] *See*, *id*. at 147-48.

[136] *Id*. at 28.

[137] *Id*. at 29.

[138] *See*, *id*. at 147-48.

[139] ECF # 6 at 19.

asserts that he raised this claim on direct appeal,[140] it is not among the six assignments of error raised to the Ohio appeals court[141] nor is it one of the propositions of law presented to the Supreme Court of Ohio.[142] Accordingly, even if what seems to be exclusively a state law claim could be viewed as stating a federal constitutional claim, that claim would be procedurally defaulted for not having been raised at any time to an Ohio court during the direct appeal. The record shows further that no excuse for this default has been advanced. Thus, I recommend that ground 22 be dismissed.

v.      Ground 4

Ground four raises the claim that the trial court should have instructed the jury that the State was required to prove a culpable mental state as an essential element in aiding and abetting.[143] This claim was raised as the sixth assignment of error to the Ohio appeals court[144] and the third proposition of law to the Supreme Court of Ohio.[145] That said, however, the Ohio appeals court found first that this claim had been waived because no objection to the

-------------------------

[140] *Id.*

[141] ECF # 16, Attachment at 28-29.

[142] *Id.* at 147-48.

[143] ECF # 6 at 9.

[144] ECF # 16, Attachment at 29.

[145] *Id.* at 147.

jury instruction had been made at trial.[146] Then, because the alleged error had been waived, the appeals court proceeded to affirm the instruction under a plain error analysis.[147]

Ohio's contemporaneous objection rule has long been recognized as an adequate and independent state law ground for procedural default.[148] Moreover, the alternative plain error review by the Ohio appeals court is not equivalent to a review on the merits and does not invalidate its previous finding that the claim was waived.[149]

For the foregoing reasons, and because Jenkins has presented no basis to excuse this default, I recommend dismissing ground four as procedurally defaulted.

**3.    *Ground 27 should be denied on the merits because the state court decision adjudicating this claim was not contrary to clearly established federal law.***

In this ground, Jenkins asserts that the "trial court committed reversible error by sustaining the state's objection to a proper question by defense counsel to witness Raymond Byrd."[150] This ground was presented to the Ohio appeals court as the second assignment of error, with the added language that this action by the trial court violated Jenkins's constitutional right to confront the witnesses against him.[151] The argument to the Supreme

---

[146] *Id.* at 137.

[147] *Id.* at 137-41.

[148] *Keith v. Mitchell*, 455 F.3d 662, 673 (6th Cir. 2006).

[149] *Seymour v. Walker*, 224 F.3d 542, 555 n. (6th Cir. 2000) (citing *Harris v. Reed*, 489 U.S. 255, 264 n.10 (1989)).

[150] ECF # 6 at 20.

[151] ECF # 16, Attachment at 46.

Court of Ohio on this issue was in two separate propositions of law: (a) "[w]hen a trial court bars cross-examination on a critical fact, the standard of review on Confrontation Clause claims is de novo;" and (b) "[w]hen deciding whether a Confrontation Clause violation is harmless error beyond a reasonable doubt under *Chapman*, the correct inquiry is whether, assuming that the damaging potential of the cross-examination were fully realized, a reviewing court might nevertheless say that the error was harmless beyond a reasonable doubt."[152]

I note first that the State contended that this ground, as those in the prior section, was procedurally defaulted because it was not framed as a federal constitutional violation before the Ohio Supreme Court but rather asserted there as merely involving a challenge to the standard of review employed by the appeals court.[153] While it is true that the actual propositions of law raised to the Ohio Supreme Court are confined to the method of review employed by the appeals court,[154] it is also true that Jenkins's brief in support of jurisdiction clearly rests on the argument – similar to that presented to the appeals court – that his Confrontation Clause right was violated by the decision of the trial court to sustain the state's objection to a defense question on cross-examination.[155] Thus, because it is by no means certain that Jenkins did procedurally default on this argument, and also because this ground

---

[152] *Id.* at 147.

[153] ECF # 16 at 18.

[154] *See*, *id*. at 7-8 (quoting propositions of law).

[155] *See*, ECF # 16, Attachment at 154-59.

-31-

can be adjudicated against Jenkins on the merits, I recommend overlooking any assertion of procedural default and proceeding to AEDPA review of this claim.

A brief overview of the matter at issue here is useful. As set forth in Jenkins's brief in support of jurisdiction, the issue arises in the context of cross-examination of co-defendant Raymond Byrd – one of two individuals who pled guilty and agreed to testify against Jenkins in return for a lesser sentence.[156] At the point of the trial when Byrd testified, forensic evidence had established that the victim had been killed by a shot from a .9 mm gun, and testimony from the two co-defendants was that this .9 mm was the weapon Jenkins brought to the crime.[157]

Byrd, who had previously revealed that he brought a shotgun to the scene, followed his cross-examination by stating in response to juror's questions that he also had a .32 handgun in his pocket at the time but that he did not shoot that gun during the crime.[158] Byrd had testified that during the murder he had been wrestling with the victim for the shotgun.[159]

So, as part of his overall strategy of seeking to suggest that Byrd or the other co-defendant was actually the shooter,[160] Jenkins's attorney then asked Byrd on re-cross:

---

[156] *Id.* at 112.

[157] *Id.* at 117.

[158] *Id.* at 120.

[159] *Id.* at 117.

[160] *Id.*

"When that man took that shotgun off you, you pulled a .9 and shot him, didn't you?"[161] The state objected and the court sustained the objection.[162]

The Ohio appeals court began its analysis of Jenkins's assignment of error by noting that a defendant's right to cross-examination is guaranteed by the Sixth Amendment.[163] However, it then noted that under the Ohio Rules of Evidence and case authority, the scope of cross examination is generally committed to the discretion of the trial court and, in that regard, the right may be limited by whether a factual predicate for the question exists.[164] In this case, it found that, because there was no evidence that Byrd had or fired a .9 mm gun such as was used to shoot the victim or that the victim was shot by the .32 caliber gun that Byrd testified to having, the trial court did not abuse its discretion in disallowing the question premised on Byrd using a .9 mm gun.[165]

The Supreme Court in *Delaware v. Van Arsdall*[166] teaches that trial judges "retain wide latitude insofar as the Confrontation Clause is concerned to impose reasonable limits on [] cross-examination based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness's safety, or interrogation that is repetitive or only

---

[161] *Id.* 120.

[162] *Id.*

[163] *Id.*

[164] *Id.* (citations omitted).

[165] *Id.*

[166] *Delaware v. Van Arsdall,* 475 U.S. 673 (1986).

marginally relevant."[167] In addition, *Van Arsdall* plainly states that "the Confrontation Clause guarantees an *opportunity* for effective cross-examination, not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish."[168]

Recently, the Sixth Circuit applied this clearly established federal rule of *Van Arsdall* to another similar instance where a habeas petitioner was claiming that his Confrontation Clause right to cross-examination was abridged by an Ohio appeals court decision not to overturn a trial court's ruling to limit cross-examination. In *Rogers v. Kern*,[169] the Sixth Circuit observed that in that case an Ohio "trial court's exercise of its discretion under the state evidence rules to preclude defense counsel's inquiries was the type of reasonable limitation on cross-examination contemplated in Van Arsdall."[170] Accordingly, mindful of the high level of deference due to state court adjudications under AEDPA that recently has been re-emphasized by the Supreme Court,[171] the Sixth Circuit in *Rogers* stated: "We defer to the Ohio Court of Appeals' denial of Rogers' Confrontation Clause claim as a reasonable application of clearly established federal law."[172]

---

[167] *Id.* at 679.

[168] *Id.*

[169] *Rogers v. Kern*, No. 11-3152, 2012 WL 2126355 (6th Cir. June 12, 2012).

[170] *Id.*, at *6.

[171] *Cullen v. Pinholster*, __ U.S. __, 131 S. Ct. 1388, 1398 (2011); *Harrington*, 131 S. Ct. at 786.

[172] *Rogers*, 2012 WL 2126355, at *6.

-34-

Here, for similar reasons as were articulated in *Rogers*, I recommend denying Jenkins's 27th ground for relief because the Ohio appellate court decision in this regard is not an unreasonable application of the clearly established federal law of *Van Arsdall*.

## Conclusion

For the foregoing reasons, I recommend that the petition of Zabe John Jenkins for a writ of habeas corpus be dismissed in part and denied in part as is more fully set forth above.

Dated:  November 30, 2012                    s/ William H. Baughman, Jr.
                                             United States Magistrate Judge

## Objections

Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days of receipt of this notice. Failure to file objections within the specified time waives the right to appeal the District Court's order.[173]

---

[173] *See*, *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981). *See also*, *Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).